UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

NOEL MAURICIO SALGADO

Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER JOHN
OGUNMOYIN SHIELD #15089, POLICE OFFICER
RICHARD QUINLAND SHIELD #16176, POLICE
OFFICER MARCELLA THOMASBURKE SHIELD
#30465, AND JOHN DOE POLICE OFFICER #1,

Defendants.

---------------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND**

**14CV6415 (ILG)(CLP)**

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff seeks relief through 42 U.S.C.
§1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to
violations of the laws and Constitution of the State of New York.

2.      The claim arises from an October 29, 2013 incident in which Officers of the
New York City Police Department ("NYPD"), acting under color of state law,
intentionally and willfully subjected plaintiff to, among other things, excessive force,
assault and battery.

3.      Plaintiff seeks monetary damages (special, compensatory, and punitive) against
defendants, as well as an award of costs and attorneys' fees, and such other and further
relief as the Court deems just and proper.

## JURISDICTION

4.      This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

<u>VENUE</u>

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

<u>PARTIES</u>

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.    Defendant police officers were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of agents, servants and employees of the City of New York. On information and belief, at all times relevant hereto, defendant

officers were involved in the decision to arrest plaintiff without probable cause and subject him to excessive force or failed to intervene in the actions of their fellow officers when they observed them arresting plaintiff without probable cause.  On information and belief, at all times relevant hereto, defendant officers were under the command of the Brooklyn Transit Bureau and are sued in their individual capacity.

11.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<u>NOTICE OF CLAIM</u>

12.   Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

<u>FACTUAL ALLEGATIONS</u>

13.   Mr. Salgado is a 36 year old man with no criminal record.  On October 29, 2013, Mr. Salgado was riding on the L train toward home.  At approximately 10:45PM, he got off the train at the Morgan Avenue station and was approached by two officers on the platform.  He asked the officers why he was being stopped and began removing his jacket to show the officers that he was not in possession of any illegal substances.

14.   Within a minute, two additional officers responded to scene and forcefully took Mr. Salgado to the ground.  He was immediately handcuffed behind his back.  Mr. Salgado repeatedly informed the officers that the handcuffs were very tight and that he was not resisting.

15.     The officers then carried Mr. Salgado up two flights of stairs and transported him to the precinct.

16.     Inside the precinct, Mr. Salgado was placed on a bench near the intake area. When Mr. Salgado recognized his arresting officer standing by the front desk, Mr. Salgado spit in his direction.

17.     Another defendant officer was sitting on the bench next to Mr. Salgado and saw that he had spit toward the other officer.  The officer on the bench told Mr. Salgado that "no one spits at a cop" and then punched him in the face.  The punch caused Mr. Salgado to fall over on his side on the bench.  He was then taken to the ground and repeatedly struck by the defendant officers.  He remained handcuffed behind his back during the entire assault.

18.     Mr. Salgado was eventually thrown inside a cell where he lost consciousness. He woke up on the floor of the cell covered in blood.  An officer came into the cell, asked Mr. Salgado what had happened and called for medical personnel.

19.     Mr. Salgado was taken to Interfaith Hospital Center by an ambulance.  He was treated for several injuries including a cut above his eye that required stitches, a chipped tooth, a cut to his mouth, cuts on his wrists and a lump on the back of his head.

20.     Approximately twenty hours after his arrest, Mr. Salgado was brought before a criminal court judge in Brooklyn.  He was charged with misdemeanor offenses that have now been dismissed and sealed.

21.     At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described

and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

22.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

<u>DAMAGES</u>

23.    As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.    Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

b.    Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.    Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.    Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.    Physical pain and suffering;

f.    Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.    Loss of liberty;

h.    Economic loss.

<u>FIRST CAUSE OF ACTION</u>
42 U.S.C. § 1983

24.    The above paragraphs are here incorporated by reference.

25.    Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, excessive force and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §1983.

26.    Plaintiff has been damaged as a result of defendants' wrongful acts.

SECOND CAUSE OF ACTION
False Arrest and False Imprisonment

27.    The above paragraphs are here incorporated by reference.

28.    Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

29.    Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

30.    Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

31.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

THIRD CAUSE OF ACTION
Assault and Battery

32.    The above paragraphs are here incorporated by reference.

33.    By physically taking plaintiff to the floor of the subway platform and then

carrying him up several flights of stairs by his handcuffed arms, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and offensive touching.  By striking plaintiff in the face and several times throughout his body while he was handcuffed inside the precinct, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and offensive touching.

34.   Defendants engaged in and subjected plaintiff to immediate harmful and offensive touching and battered him without his consent.

35.   Defendants used excessive and unnecessary force with plaintiff.

36.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

37.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

FOURTH CAUSE OF ACTION
Municipal Liability 42 U.S.C. §1983

38.   The above paragraphs are here incorporated by reference.

39.   The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

40.   The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

41.   The aforesaid event was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of his police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of his fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

42.   For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected.  The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations

8

to the NYPD, once finding misconduct by an officer.

43.   The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.  Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Commissioner Kelly has done on many occasions.

44.   Further, the City has no procedure to notify individual officers or his supervisors of unfavorable judicial review of his conduct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated his law department from the discipline of police officers, so that civil suits against police officers for actions taken in his capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.  Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

45.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action.  This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

46.    Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:
               Brooklyn, New York
               February 18, 2015

TO:
                                        Respectfully yours,

City of New York
Officer John Ogunmoyin          By: Nicole Bellina, Esq.
Office of Corporation Counsel    Stoll, Glickman & Bellina, LLP
100 Church Street              Attorneys for Plaintiff
New York, NY  10007           475 Atlantic Ave. Fl.3
                                    Brooklyn, NY  11217
Officer Richard Quinland      (718) 852-3710 x103
Officer Marcella Thomasburke
Transit Bureau Bklyn Task Force
 518 Metropolitan Ave.
 Brooklyn, NY 11211